## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| RICHARD DANIEL ARNOLD, JR., ) <br> on behalf of himself and all those ) <br> similarly situated, ) <br> ) <br>             Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TAKATA CORPORATION; ) <br> TK HOLDINGS, INC.; ) <br> HIGHLAND INDUSTRIES, INC.; ) <br> HONDA MOTOR CO., LTD.; and ) <br> AMERICAN HONDA MOTOR ) <br> CO., INC., ) <br> ) <br>          Defendants. ) | CIVIL ACTION NO. _____ <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

## NATURE OF CLAIM

1.     Plaintiff Richard Daniel Arnold, Jr. ("Plaintiff" or "Mr. Arnold") brings this action on behalf of himself and on behalf of all persons similarly situated who purchased or leased Defective Vehicles (or Class Vehicles) (further defined below) manufactured, distributed, or sold by Defendant Honda (further defined below) that contain airbags manufactured by Defendant Takata (further defined below), for claims under federal and state law. Plaintiff, based on personal knowledge as to his own acts, and upon information and belief as to all other

matters, states as follows:

2.     As used in this Complaint, "Defective Vehicles" or "Class Vehicles" refers to all Honda vehicles purchased or leased in the United States that have airbags manufactured by Defendant Takata and have been subject to an airbag-related warning or recall, including, but not limited to, the following vehicles: 2001 – 2007 Honda Accord; 2001 – 2005 Honda Civic; 2002 – 2006 Honda CR-V; 2003 – 2011 Honda Element; 2002 – 2004 Honda Odyssey; 2003 – 2007 Honda Pilot; 2006 Honda Ridgeline; 2003 – 2006 Acura MDX; 2002 – 2003 Acura TL/CL; and 2005 Acura RL.   The terms "Defective Vehicles" or "Class Vehicles" also includes all Honda vehicles purchased or leased in the United States that have airbags manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects.

3.     Other vehicle manufacturers' cars have also been recalled because they have airbags manufactured by Defendant Takata, including certain models of Chryslers, BMWs, Fords, Mazdas, Nissans, Toyotas, Subarus, and GMs.

4.     Airbags are designed and manufactured to inflate rapidly during an automobile collision.  The airbag's purpose is to decelerate and cushion occupants during a crash and provide protection to their bodies when they move toward or

strike objects in the vehicle, such as the steering wheel, dash board, windshield, or side windows and side pillars.  When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe, and one of the central safety features of any motor vehicle is the airbag.

5.     The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury in a collision event, violently explode and propel dangerous and lethal amounts of metal debris and shrapnel.

6.     The defects in Takata's airbags date back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002 contained manufacturing defects.  Takata became aware of the defects at least as early as 2001 when the first recall was issued relating to the exploding Takata airbags in Isuzu vehicles.

7.     In 2004, a Takata airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and did nothing about it.  Honda did not issue a recall.  Neither Honda nor Takata sought the involvement of federal safety regulators.  In fact, Honda did not tell regulators about this event until an inquiry

into Honda's 2009 recall.

8. The serious danger posed by the Takata airbags was not disclosed to U.S. safety regulators until 2008, despite red flags raised by the 2001 Isuzu and 2004 Honda exploding airbag incidents. Indeed, Honda received three additional reports of airbag rupture incidents in 2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags. Finally, in November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles. However, at that time Honda recalled only 4,000 Accords and Civics.

9. In April 2009, six months after the limited 2008 recall, a Takata airbag in a Florida resident's Honda Civic exploded after a minor accident. The lethal explosion sent a piece of shrapnel from the airbag flying into the driver's neck. Although she survived, when highway troopers found her, blood was gushing from a gash in her neck ("The Griffin incident"). The Honda Civic was not part of the 2008 Recall.

10. In May 2009, a driver was killed when the Takata airbag in her 2001 Honda Accord exploded after her car bumped into another car in a parking lot. While she apparently survived her collision, the metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death ("the

Parham incident").

11.     That 2001 Honda Accord was not part of the 2008 Recall.

12.     Two months later Honda expanded its 2008 recall to approximately 400,000 vehicles, including 2001 and 2002 Acura, Civic, and Accord models.

13.     In or about July 2014, a South Florida resident was involved in a crash while driving her 2001 Honda Civic.  While she survived the automobile accident, she was badly injured when a piece of metal exploded from her car's Takata airbag into her forehead ("the Nunez incident").

14.     On September 29, 2014, another Florida resident died four days after her 2001 Honda Accord struck another car and the Takata airbag exploded, sending shrapnel into her neck ("the Tran incident").  A week after her death a letter arrived in the mail from Honda concerning airbags that could explode.

15.     Notwithstanding these incidents, Takata and Honda have been slow to report the full nature and extent of the danger posed by Takata airbags to drivers and passengers and failed to issue appropriate recalls.  Both Honda and Takata provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay.  Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem.  Instead, Takata

and Honda repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and at least four deaths over the last 13 years.

16.    It was not until 2013, four years after Honda first reported the problem to U.S. regulators, that a more detailed recounting of Takata's safety failures was revealed, and the full scope of the defects have yet to be revealed or determined.

17.    Takata's "quality control" is substandard and otherwise lacking. Takata's airbag manufacturing plants did not abide by Takata's internal safety rules.  In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

18.    Moreover, Takata misled at least one other car manufacturer to believe that its vehicles were not affected by Takata's defective airbags.  In 2010, Takata affirmatively assured BMW that its vehicles were not affected because BMW's airbags were manufactured on a different production schedule from Honda's airbags.  It wasn't until 2013 that Takata finally admitted that BMW's airbags were in fact at risk of exploding.  Takata's actions thus aided in the delay of other car manufacturers issuing recalls on their vehicles with Takata airbags.

19.     In June 2014, NHTSA announced that Honda, as well as BMW, Chrysler, Ford, Mazda, Nissan, and Toyota were conducting limited regional recalls to address a possible safety defect involving Takata brand airbag inflators. The action was influenced by a National Highway Traffic Safety Administration ("NHTSA") investigation into six reports of airbag inflator ruptures, all of which occurred in Florida and Puerto Rico.

20.     To date, over 14 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by Honda (and other vehicle manufacturers) could join the list of recalls.  The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago.

21.     U.S. federal prosecutors have taken notice of Takata's failure to properly report the problem with its airbags and are trying to determine whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers.

22.     As a result of Takata's and Honda's misconduct, Plaintiff and Class Members (defined below) were harmed and suffered actual damages in that the Defective Vehicles have potentially deadly airbags that pose an ongoing danger

and threat to drivers and passengers and have drastically diminished the value of the cars in which they are installed. Plaintiff and the Class members did not receive the benefit of their bargain, and received vehicles that were of a lesser standard, grade and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations. Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided. A vehicle purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car—such as the Defective Vehicles—that is known to contain a Takata airbag. All purchasers of the Defective Vehicles overpaid for their vehicles. Furthermore, the public disclosure of the defective Takata airbags has caused the value of the Defective Vehicles to materially diminish. Purchasers or lessees of the Defective Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the defects been disclosed.

23. Even more problematic is that the current recalls have done little if anything to protect owners and lessees of Defective Vehicles from the urgent and ongoing threat posed by Takata airbags because there are not enough new airbags to replace the millions of recalled airbags.

24.     All owners or lessees of the Defective Vehicles have been strongly urged by NHTSA "to act immediately" on the recall notices to replace Takata airbags.  NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

25.     However, Takata is unable to manufacture enough new, safe airbags quickly enough to replace the faulty airbags in the nearly eight million vehicles that are the subject of the most recent recall.  "There's simply not enough parts to repair every recalled single car immediately," said Chris Martin, a spokesman for Honda.[1]

26.     Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced.  Some dealers have reported receiving up to 900 calls per day about the recalls and are telling customers that they may have to wait months before airbags can be replaced.

27.     Instead of replacing the airbags, some dealers are either disabling airbags and leaving customers with vehicles that are unsafe to drive, or are advising customers to not drive vehicles with Takata airbags until the airbags can

---

[1] Hiroko Tabuchi and Christopher Jensen, *It Looked Like a Stabbing, but Takata Airbag Was the Killer*, N.Y. Time, Oct. 20, 2014.

be replaced.

28.    Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until proper repairs can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.  Toyota has not explained how drivers who rely on these vehicles for work and school are to cope without means for transportation.

29.    Plaintiff and Class Members are either left with unsafe vehicles or no vehicle at all. At this time, automakers are not offering customers the use of loaner vehicles.

30.    The United States Congress is concerned with the Takata airbag problem and has questioned the legality of Toyota's and other automaker's responses.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), expressed their alarm "that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable.  As a matter of policy, this step is extraordinarily troubling and potentially dangerous.  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a

manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[2]

31.     Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[3]   **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."**[4]

32.     There is an immediate need to provide safe vehicles for Plaintiff and Class Members.  Takata and Honda knew or should have known that the Takata airbags installed in millions of vehicles were defective.  Both Takata and Honda concealed their knowledge of the nature and extent of the defects from the public, and have shown a blatant disregard for public welfare and safety.

## JURISDICTION AND VENUE

33.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(a) and (d), because Plaintiff and members of the

---

[2] *Id.*
[3] *Id.*
[4] *Id.* (emphasis added).

proposed Classes are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

34.     This Court has personal jurisdiction over Plaintiff because he is, and at all relevant times has been, a resident and citizen of The State of Georgia.  This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to property in this state arising out of Defendants' acts and omissions outside this state and at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state or products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

35.     Venue is proper in this Court pursuant to LR 3.1, N.D. Ga. and 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to class

members residing in this District, and the Defendants are residents of this District under 28 U.S.C. 1391(c)(2) because they are subject to personal jurisdiction in this District.

## THE PARTIES

36.     Plaintiff and proposed Nationwide and Georgia State Class Representative Richard Daniel Arnold, Jr. is a resident and citizen of Atlanta, Georgia.  Mr. Arnold, Jr. owns a 2006 Honda Pilot with Takata airbags and was injured as a result of Defendants' unlawful conduct.

37.     Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells airbags.  Takata is a vertically-integrated company and manufactures component parts in its own facilities.  Takata Corporation can be served with process through the Hague Convention Treaty, to wit:   Takata Corporation, ARK Hills South Tower, 4-5 Roppongi 1-Chrome, Minato-ku, Tokyo, 106-8488, Japan.

38.     Defendant TK Holdings, Inc. ("TK Holdings") is a Delaware Corporation and a subsidiary of Takata Corporation headquartered in Auburn Hills, Michigan.    TK Holdings sells, designs, manufactures, tests, markets, and

distributes airbags in the United States.  TK Holdings both directly and through subsidiaries, owns and operates 56 manufacturing plants in 20 countries.  TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.  TK Holdings has an agent for service upon which service can be had, to wit:  Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia  30092.

39.    Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina.  Highland manufactures industrial and automotive textile product solutions including airbag fabrics for the automotive airbag industry.  Highland manufactures airbags in the United States, including airbags at issue in this litigation.  Highland has an agent for service upon which service can be had, to wit:   Highland Industries, 327 Hillsborough Street, Raleigh, North Carolina  27603-1725.

40.    Defendants Takata, TK Holdings, and Highland are collectively referred to as "Takata" or "Takata Defendants."  Takata is the manufacturer of all of the faulty airbags recalled by NHTSA that are the subject of this Complaint.

41.    Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and sells motorcycles, automobiles, and power products

through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.  Honda Motor can be served with process through the Hague Convention Treaty, to wit:  Honda Motor Co, LTD 2-1-1 Minami-Aoyama Minato-Ku, Tokyo, 107-8556, Japan.

42.    Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California.  American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana, East Liberty, Ohio, Lincoln, Alabama, and Marysville, Ohio.  American Honda has an agent for service upon which service can be had, to wit:  Richard A. Brown, Jr., 5 Glynn Avenue, Brunswick, Georgia  31520.

43.    Defendants Honda Motor and American Honda are collectively referred to as "Honda" or "Honda Defendants."  Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants.  NHTSA has recalled to date the following Honda vehicles for having faulty Takata airbags, totaling 5,051,364 vehicles: 2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey;

2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.

44.     Defendant Honda, along with Defendant Takata are collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

45.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983. Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

46.     The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed.  The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer.  That explosive is encased in a metal canister.

47.     The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico. These plants also manufacture airbag inflators.

48.     Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda.

49.     Since at least 2007, Takata has claimed to prioritize driver safety as its "dream."[5]

50.     Takata further claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[6] Takata has failed to live up to its claims by manufacturing, distributing, and selling airbags that are dangerous and can cause serious bodily injury or death.

**The Honda and Takata Problem**

51.     Takata has known since at least 2001 that Takata airbags, and particularly the inflator component, were defective, as Isuzu was forced to make a recall that year due to exploding Takata airbags.

52.     In 2004, a Takata airbag violently exploded in a Honda Accord, shooting out metal fragments and injuring the car's driver. At a loss to explain the incident, Honda and Takata deemed it "an anomaly" and did not issue a

---

[5] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.
[6] *Id.*

recall or seek the involvement of federal safety regulators.[7]

53.    In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of the airbags.  These incidents triggered an internal investigation by Takata, including a survey of inflators.

54.    Honda settled financial claims with the individuals injured by the airbags. These settlements were confidential.

55.    Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007.  Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

**2008: Recall 08V593**

56.    Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but for only about 4,200 of its vehicles.  This recall

---

[7] Hiroko Tabuchi, *Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, N.Y. Times (Sept. 11, 2014).

occurred over four years after the first airbag explosion incident in a Honda car.

57.    The November 2008 recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[8]  Honda reported that it learned of the problem via a June 2007 claim.

**2009: Recall 09V259**

58.    In June of 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

59.    Honda subsequently received two more claims of "unusual deployments," Ms. Parham's May 28, 2009 incident and another on June 9, 2009.

60.    As a result of Takata's June 2009 follow up report and the additional claims of "unusual deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").

61.    In August 2009, NHTSA's Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in

---

[8] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.

the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[9]

62.    NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."[10]

63.    NHTSA's Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[11]

64.    In Honda's September 2009 reply to NHTSA, the automaker said that its information about the "unusual deployments" came from Takata:   "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[12]

65.    Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to

---

[9] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.
[10] *Id.*
[11] *Id.*
[12] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.

assembly of the inflators."  Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.[13]

66.    Honda also disclosed to NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of its vehicle's airbag.  Honda claimed that they "only recently were reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[14]

67.    At least four complaints have been submitted to NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

68.    In its communications with NHTSA, Takata continually gave misleading or incorrect information about the airbags it manufactured that were part of the recalls.

---

[13] *Id.* at 1.
[14] *Id.* at 4.

69.    On November 20, 2009, NHTSA requested information from Takata as part of its ongoing investigation into the airbag inflators that triggered the 2009 Recall.

70.    Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response").  Both responses provided vague and misleading information about the extent and seriousness of the problem.

71.    In both responses, Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls. However, in the Full Response, Takata states that there were, in fact, differences in the production processes between the lots.

72.    In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  Takata claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000.  Takata also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

73.    Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata admitted, its records did not have that information.  Instead, they gave just the manufacturing dates.

74.     In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 **to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda.**"[15] This statement would prove to be untrue.

75.     In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

76.     In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.  Takata further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-

---

[15] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA at 2.

related defect."[16]

77.    Takata wrote in its Full Response that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."[17]

78.    Both Honda and Takata represented to the public and NHTSA that the total number of affected vehicles was quite small.

**2010: Recall 10V041**

79.    In 2010, merely months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles, while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

80.    Honda's explanation for the airbag defects changed yet again.  Honda explained that there are two different manufacturing processes utilized in the

---

[16] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.

[17] *Id.* at 11-12.

preparation of an airbag propellant. While one process is within specification, the other is not. Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

**2011: Recall 11V260**

81.    In April 2011, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall").

**2013: Recall 13V132**

82.    By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to NHTSA.

83.    According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible." Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.

84.    On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags. Honda stated:

> A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing

25

processes correctly identifying and removing the out of specification propellant. Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules.[18]

85.    On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for its 2001-2003 Civic, 2002-2003 CR-V, and its 2002 Odyssey vehicles with NHTSA.  In that notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

**Defect description:**

In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure.  If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture. In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant.[19]

86.    On April 11, 2013, Takata filed a Defect Information Report titled "Certain Airbag Inflators Used as Original Equipment" ("Takata DIR").  In that report, Takata identified the defective airbags as follows:

Certain airbag inflators installed in frontal passenger-side airbag modules equipped with propellant wafers manufactured at Takata's Moses Lake, Washington plant during the period from April 13 2000 (start of production) through September 11, 2002…and certain airbag inflators manufactured at Takata's Monclova, Mexico plant during the period from October 4, 2001 (start of production) through October 31,

---

[18] April 10, 2013 Letter to NHTSA, at 2-3.
[19] *Id.* at 2.

2002....[20]

87.   Not until its April 2013 Report did Takata finally admit that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[21]

88.   Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records.[22]   While it did not have the information to estimate the number of vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.

89.   Takata described the defect as follows:

> Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . . In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions.   These wafers could have absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment. This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[23]

---

[20] Takata April 11, 2013 DIR at 3.
[21] *Id.* at 2-3.
[22] *Id.* at 3.
[23] *Id.* at 3-4.

**Recalls and Notices Relating to Airbags in Non-Honda Vehicles**

90.   In April of 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of **3.6 million** vehicles containing Takata airbags.

91.   Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands, and equipped with Takata airbag inflators.

92.   On October 22, 2014, NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.  Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles) and Toyota (877,000 potentially affected vehicles).[24]

---

[24] Ben Klayman, *U.S. regulators expand number of vehicles affected by Takata recalls*, Oct. 22, 2104, Reuters, *available at* http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022.

93.    Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

**Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

94.    As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.    Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[25]

95.    Despite all of the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds, and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

---

[25] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, *Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018.

**Federal Investigations**

96.    NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[26]

97.    In a Consumer Advisory dated October 22, 2014, NHTSA said:

The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

98.    The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

**Automakers Have Failed to Provide Vehicle Owners with Takata Airbags with Replacement Parts or Vehicles**

99.    In a statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, dated October 22, 2014, Honda announced:

---

[26] Klayman, *supra* n.20.

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

100. However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially deadly airbags.

101. Because of defects in their design, manufacture, and/or assembly, the Takata airbags installed in the Defective Vehicles are, by their nature, susceptible to failure during normal and expected conditions. In any given collision, it is uncertain whether a Takata airbag will properly deploy or whether, due to an inflator defect, fail to deploy and instead result in an explosion sending metal shrapnel into the passenger compartment, thereby endangering the vehicle occupants.

102. Takata airbags in the Class Vehicles inhibit Class Members' proper and safe use of their vehicles, reduce vehicle occupant protection, and endanger Class Members and other vehicle occupants.

103. The Takata airbag defect makes the Class Vehicles unreasonably dangerous and unsafe. Because of the defects, the Class Vehicles, when collisions occur, present an unreasonable and extreme risk of serious bodily harm or death to

the vehicle's occupants.

104.   Prior to the manufacture and sale of the class vehicles, Honda knew of the Takata airbag defect through sources such as pre-release design, manufacturing, and field testing data; in-warranty repair data; early consumer complaints made directly to the vehicle manufacturer, collected by the National Highway Transportation Safety Administration's Office of Defect Investigation ("NHTSA ODI") and/or posted on public online vehicle owner forums; field testing done in response to those complaints; aggregate data from Honda dealers; and accident data; yet despite this knowledge, Honda failed to disclose and actively concealed the Takata airbag defect from Class Members and the public, and continued to market and advertise the Class Vehicles as reliable and safe vehicles, which they are not.

105.   Plaintiff's vehicle and the Class Vehicles were designed, developed, manufactured, tested, marketed, distributed and/or sold by Honda.   Additionally, the Takata airbags that were incorporated into the design of the Plaintiff's vehicle and the Class Vehicles, were designed, developed, manufactured, marketed, distributed and/or sold by Defendants.   Defendants co-developed the airbags of the Class Vehicles.   Plaintiff's vehicle and airbags, as well as the Class Vehicles and

their Takata airbags, were in substantially the same condition as when they were designed, manufactured and sold by Defendants.

106.   The Class Vehicles are not reasonably safe when being so used in a foreseeable manner but, to the contrary, were defective and unreasonably dangerous when being so used.  Defendants knew, or in the exercise of reasonable care should have known, that the Class Vehicles and incorporated Takata airbags were defective and unreasonably dangerous to the human body when being so used in a foreseeable manner.

107.   As a result of the Takata airbag problems and defects described herein, and which affect the Class Vehicles, all owners and lessees of Class Vehicles have suffered economic damage to their property due to the incorporated Takata airbag.  Many are afraid to drive their cars or to transport their family members in Class Vehicles.  As a result of recent publicity of the Takata airbag problems, the value of the Class Vehicles has dropped.  Many owners and lessees are unable to sell or trade in their Class Vehicles.

108.   Honda made both re-sale value and safety major elements of its marketing, advertising and sales efforts for the Class Vehicles.  Thus, potential resale value was made a central part of the bargain when purchasing a Class Vehicle.

109.   Class Members have suffered specific and actual economic damages as a result of Defendants' materially deceptive and misleading trade practices.  A vehicle with defective or potentially defective Takata airbags is worth less than one with no concern over such defective airbags.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

110.   Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2001.  Defendant Honda has known of the defects in the Takata airbags in Honda's vehicles since 2004.  Defendants knew well before Plaintiff and Class Members purchased the Defective Vehicles, and have concealed from or failed to notify Plaintiff, Class Members, and the public of the full and complete extent and nature of the defects.

111.   Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

112.   Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

# CLASS ACTION ALLEGATIONS

113. The Classes' claims all derive directly from a single course of conduct by Defendants. This case is about the responsibility of Takata and Honda, at law and in equity, for their knowledge, their conduct, and their products. Takata and Honda have engaged in uniform and standardized conduct toward the Classes. They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many states share the same legal standards and elements of proof, facilitating the certification of a National Class (and/or Georgia State Class) for some or all claims. Accordingly, Plaintiff brings this lawsuit as a class action on his own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

114. Plaintiff brings this action and seeks to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules

of Civil Procedure on behalf of himself and a Nationwide Class defined as follows:

**All persons who leased or purchased a Class Vehicle in the United States.**

115.   Alternatively, in the event the Court declines to certify a Nationwide Class, Plaintiff brings this action on behalf of a Georgia Class defined as follows:

**All persons in the State of Georgia who leased or purchased a Class Vehicle.**

116.   The Nationwide Class and the Georgia Class and their members are sometimes referred to herein as the "Class" or "Classes."

117.   To the extent warranted, the list of Defective Vehicles for the purpose of the Nationwide Class and/or the Georgia Class will be supplemented to include other Honda vehicles that have Takata airbags that may be defective.

118.   Excluded from each Class are Takata and Honda, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and Honda; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

119.   The Class disclaims any recovery for physical injury resulting from the Takata airbags.  But, the increased risk of injury from the Takata airbag serves

as an independent justification for the relief sought by Plaintiff and the Class.

**Numerosity and Ascertainability**

120.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs are informed and believe that there are millions of Defective Vehicles nationwide, and thousands of Defective Vehicles in Georgia.  Individual joinder of all Class members is impracticable.

121.   The Class is ascertainable because its members can be readily identified using registration records, sales records, production  records, and other information kept by Takata and Honda or third parties in the usual course of business and within their control.  Plaintiff anticipates notice being provided to the certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Predominance of Common Issues**

122.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because there are substantial questions of law and fact that have common answers that are the same for each member of the Class and which predominate over questions affecting only individual Class members. These include, without limitation, the following:

(a)     Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the Takata airbags at issue;

(b)     Whether Defendants knew or should have known about the airbag defects, and, if yes, how long Defendants have known of the defects;

(c)     Whether Defendants had knowledge of Takata's quality control issues and the airbag defects well in advance of the issuance of a safety recall affecting millions of vehicles.

(d)     Whether Defendants had knowledge of the Takata quality control issues and airbag defects, yet continued to manufacture, distribute, advertise, and market the vehicles without correcting the problems and while concealing the dangers associated with the airbags.

(e)     Whether Defendants engaged in a pattern or practice of suppressing the defective nature of the Class Vehicles.

(f)     Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

(g)     Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Plaintiffs and Class Members;

(h)     Whether Defendants omitted and failed to disclose material facts about the Defective Vehicles;

(i)     Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

(j)     Whether Defendants misrepresented that the Defective Vehicles were safe;

(k)     Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbags;

(l)     Whether Defendants' statements, concealments and omissions regarding the Defective Vehicles were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

(m)     Whether Defendants' representations created express or implied warranties that were breached;

(n)     Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of

merchantability;

(o)     Whether Plaintiffs and the Class are entitled to a declaratory judgment stating that the airbag inflators in the Defective Vehicles are defective and/or not merchantable;

(p)     Whether Defendants' acts and/or omissions, unlawful, unfair, and/or deceptive practices harm Plaintiff and the Class;

(q)     Whether Plaintiff and the Class are entitled to damages;

(r)     Whether Defendants have been unjustly enriched by their conduct;

(s)     Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(t)     Whether Defendants should be declared responsible for notifying all Class Members of the defects and ensuring that all vehicles with the airbag defect are promptly inspected, repaired, or replaced;

(u)     What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

(v)     How such penalties should be most equitably distributed among Class Members.

**Typicality**

123.  This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class Members, and arise from the same course of conduct by Takata and Honda.  The relief Plaintiff seeks is typical of the relief sought for the absent Class Members.

**Adequate Representation**

124.  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in complex litigation, and specifically in prosecuting consumer class actions, including actions involving defective products.

125.  Plaintiff and his counsel are committed to diligently and vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his counsel has interests adverse to those of the Class.

**Superiority**

126.  This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class Members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class Members, which would establish incompatible standards of conduct for Takata and Honda; and because adjudication with respect

to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members, or impair substantially or impede their ability to protect their interests.

127.   For purchasers and/or lessees of Class Vehicles, their vehicles are not worth what they otherwise would be absent the defect, and they have been harmed as a result of the diminished value of the vehicles purchased and/or leased.

128.   Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small, although significant, size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

129.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and Honda have acted and refused to act on grounds generally applicable to each Class and Class Member, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class as a whole.

130.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.   The common questions of law and of fact regarding Takata's and Honda's conduct and responsibility predominate over any questions affecting only individual Class Members.

131.   Because the damages suffered by each individual Class Member, while significant, may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

132.   The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the

challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

133.   Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify a nationwide and/or a statewide class for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

134.   Plaintiff and the Class expressly disclaim any recovery in this action for physical injury resulting from the airbag defects without waiving or dismissing such claims. Plaintiff is informed and believes that injuries suffered in crashes as a result of the defective airbags implicate the Defective Vehicles and are continuing to occur because of Defendants' delays and inaction regarding the

commencement and completion of recalls and institution of repairs and replacements. The increased risk of injury from the airbag defects serves as an independent justification for the relief sought by Plaintiff and the Class.

## CLAIMS FOR RELIEF

## COUNT ONE

## ON BEHALF OF THE NATIONWIDE CLASS

## Violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301 et. seq.

135. Plaintiff brings this Count individually and on behalf of the Nationwide Class. In the event a nationwide class cannot be maintained on this Claim, this Claim is asserted by a Georgia State Class asserting claims related to a breach of warranty.

136. Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

137. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

138. The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

139. Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers

because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

140.  Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

141.  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

142.  Defendants provided Plaintiff and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).  As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.   MICH. COMP. LAWS § 440.2314(2)(a), (c), and (e); U.C.C. § 2-314.

143.  Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Defective Vehicles share common

design defects in that they are equipped with defective airbags that can explode, leaving occupants of the Defective Vehicles vulnerable to serious injury and death. Defendants have admitted that the Defective Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address each of the defects.

144.   In their capacity as warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

145.   The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiff and the other Class Members, as, at the time of purchase and/or lease, Plaintiff and the other Class Members had no other options for purchasing warranty coverage other than directly from the manufacturer.

146.   The limitations on the warranties are substantively unconscionable. Defendants knew that the Defective Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. Defendants failed to disclose these defects to Plaintiff and the other Class Members. Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks

the conscience.

147.   Plaintiff and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract.  Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

148.   Pursuant to 15 U.S.C. § 2310(e), Plaintiff is entitled to bring this class action and is not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff pursuant to Rule 23 of the Federal Rules of Civil Procedure.

149.   Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here.  At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective

Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

150. Plaintiff and the other Class Members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

151. The amount in controversy of Plaintiff's individual claim meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiff, individually and on behalf of the Class Members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the other Class Members are entitled to

recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiff and the other Class Members in connection with the commencement and prosecution of this action.

152.  Further, Plaintiff and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).  Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiff seeks a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  Plaintiff also seeks the establishment of a Defendant-funded program for Plaintiff and Class Members to recover out of pocket costs incurred, as discussed above.

153.  Plaintiff also requests, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs Plaintiff and Class Members have incurred in attempting to rectify the airbags in their vehicles. Such expenses and losses will continue as Plaintiff and Class Members must take time off from work, pay for rental cars or other transportation arrangements, and the myriad expenses involved in going through the recall process.

154.   The right of Plaintiff and the Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness require the establishment by Court decree and administration under Court supervision of a program funded by the Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## COUNT TWO

## ON BEHALF OF THE NATIONWIDE CLASS

**Violation of Michigan Consumer Protection Act ("MCPA"),
Michigan Comp. Laws Ann. § 445.903 et seq.**

155.   This Claim is brought on behalf of the Nationwide Class.

156.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

157.   At all times relevant hereto, there was in full force and effect Mich. Comp. Laws. Ann. § 445.903 *et seq.* (the "MCPA").

158.   Plaintiff and the Nationwide Class Members were "person[s]" within the meaning of the MCPA, M.C.L.A § 445.902(1)(d).

159.   At all relevant times hereto, Defendants were "persons" engaged in "trade or commerce" within the meaning of the MCPA, M.C.L.A. §

445.902(1)(d) and (g).

160.   The MCPA holds unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L.A. § 445.902(1).

161.   The practices of Defendants violate the MCPA for, inter alia, one or more of the following reasons:

(a)   Defendants represented that the Defective Vehicles had approval, characteristics, uses, and benefits that they do not have;

(b)   Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Defective Vehicles;

(c)   Defendants represented that the Defective Vehicles were of a particular standard, quality, or grade, when they were of another;

(d)   Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the Defective Vehicles, which did and tended to, mislead Plaintiff and the Class about facts that could not reasonably be known by the consumer until the recalls were issued;

(e)     Defendants failed to reveal facts concerning the airbag defects that were material to the transaction in light of representations of fact made in a positive manner;

(f)     Defendants failed to reveal material facts concerning the airbag defects to Plaintiff and the Class Members, the omission of which would tend to mislead or deceive consumers, including Plaintiff and the Class;

(g)     Defendants made material representations and statements of fact to Plaintiff and the Class that resulted in Plaintiff and the Class Members reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

(h)     Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Defective Vehicles.

162.   Plaintiff seeks injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts or; seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Class Member, reasonable attorneys' fees; and any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

163.  Plaintiff also seeks punitive damages against Defendants because they acted or failed to act with willful and conscious disregard of the rights and safety of others. Defendants intentionally and willfully misrepresented the safety and reliability of Defective Vehicles, deceived Plaintiff and Class Members on life-or-death matters, and concealed material facts that only Defendants knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly and uniformly promised Plaintiff and Class Members were safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT THREE

## ON BEHALF OF THE NATIONWIDE CLASS

### Breach of Implied Warranty of Merchantability
### (Mich. Comp. Laws § 440.2314)

164.  This claim is brought on behalf of the Nationwide Class for breach of implied warranty under Michigan law.

165.  Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

166.  Defendant Honda is a merchant with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

167.   Under MICH. COMP. LAWS § 440.2314, a warranty that the Defective Vehicles were in merchantable condition was implied by law in the transactions when Class Members purchased their Defective Vehicles.

168.   These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags installed in those vehicles explode unexpectedly, shooting out metal shrapnel toward the vehicle occupants.

169.   Defendants were provided notice of these issues by numerous complaints filed against them, internal investigations, and investigations by NHTSA.

170.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Nationwide Class has been damaged in an amount to be proven at trial.

171.   The Nationwide Class also seeks available equitable and/or injunctive relief.   Based on Defendants' continuing failures to fix the known dangerous defects, the Nationwide Class seeks a declaration that Defendants have not adequately implemented recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of

judicial supervision over the recall process is warranted.   The Nationwide Class also seeks the establishment of a program funded by the Defendants for Plaintiff and Class Members to recover out of pocket costs incurred.

## COUNT FOUR

## ON BEHALF OF THE NATIONWIDE CLASS

### Fraudulent Concealment

172.   This Claim is brought on behalf of the Nationwide Class.

173.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

174.   As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their products.

175.   Defendants had a duty to disclose the Takata airbag problems and related safety issues because they consistently marketed their vehicles as reliable and safe and proclaimed that Defendants maintain the highest safety standards. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.   One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

176.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew these facts were not known to or reasonably discoverable by Plaintiff and Class Members.  These omitted facts were material because they directly impact the safety of the Defective Vehicles.   Whether an airbag will improperly explode and propel shrapnel at occupants is a material safety concern.  Defendants possessed exclusive knowledge of the Takata airbag problems and defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

177.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

178.  Plaintiff  and  Class  Members  were  unaware  of  these  omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiff's and Class Members' actions were justified.  Defendants were in exclusive control of the material facts concerning the airbag defects and such facts were not known to the public or the Class Members.

179.   Defendants have still not made full and adequate disclosure and continues to defraud Plaintiff and Class Members and conceal material information regarding the dangerous condition and actual defects in the airbags of the Defective Vehicles.

180.   As a result of the concealment and/or suppression of facts, Plaintiff and Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiff and the Class Members paid and the actual value of that which they received.

181.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class Members' rights and well-being to protect Defendants' profits, avoid a costly recall and otherwise to enrich Defendants.   Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT FIVE

## ON BEHALF OF THE NATIONWIDE CLASS

## Claim for Actual Damages/Expense Reimbursement Fund

182.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

183.   This Count is brought on behalf of Plaintiff and The Nationwide Class.   Plaintiff and Class Members have incurred out-of-pocket expenses and damages in attempting to address and rectify the airbag defect in their vehicles, and such expenses and losses will continue as they must take time off from work, pay for rental cars or other transportation arrangements, and the myriad expenses involved in going through the recall process to correct the defect.

184.   Plaintiff and Class Members seek payment of such damages and reimbursement of such expenses under the consumer statutes and applicable law invoked in this Complaint. While such damages and expenses are individualized in detail and amount, the right of the Class Members to recover them presents common questions of law.   Equity and fairness to all Class Members requires the establishment by Court decree and administration under Court supervision of a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the airbag defects.

## COUNT SIX

## ON BEHALF OF THE NATIONWIDE CLASS

### Attorney's Fees and Expenses

185.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

186.   Defendants' actions have been in bad faith and have caused Plaintiff and the Class Members to suffer unnecessary trouble and expense.  Plaintiff and the Class are, therefore entitled to recover all expenses of litigation, including attorney's fees, costs and expenses pursuant to O.C.G.A § 13-6-11, as well as Mich. Comp. Laws. Ann. § 445.911.

## COUNT SEVEN

## ON BEHALF OF THE GEORGIA STATEWIDE CLASS

### Breach of Express Warranty Under
### O.C.G.A. § 11-2-313(1) (a)-(b)

187.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

188.   In the event that the Court declines to certify a nationwide class, Plaintiff brings this claim solely on behalf of Class Members who reside in Georgia.

189.   Defendants are and were at all relevant times merchants as defined by the Uniform Commercial Code ("UCC"), O.C.G.A. § 11-2-104(1).

190.   Defendants expressly warranted that the Class Vehicles, which are merchandise, were safe.  These warranties became part of the basis of the bargain.

191.   Defendants expressly warranted that the Class Vehicles, which are merchandise, were merchantable and fit for use for particular purposes at the time of the purchase and sale.  These warranties became part of the basis of the bargain.

192.   Defendants' Class Vehicles were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of purchase and sale.

193.   As a direct and proximate result of Defendants' breach of the express warranty, Plaintiff and the Georgia Class have been damaged as a result of the diminished value of their vehicles (Defendants' products).

194.   Plaintiff and the Georgia Class are entitled to damages, including the diminished value of their vehicles as a result of the defective airbags and the safety recalls, in addition to any costs associated with renting, leasing and/or purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## COUNT EIGHT

## ON BEHALF OF THE GEORGIA STATEWIDE CLASS

### Breach of Implied Warranty
### O.C.G.A. § 11-2-314(2)(c) & O.C.G.A. § 11-2-315

195.   Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

196.   In the event that the Court declines to certify a nationwide class, Plaintiff brings this claim solely on behalf of Class Members who reside in Georgia.

197.   Defendants are and were, at all relevant times, merchants as defined by the Uniform Commercial Code ("UCC"), O.C.G.A. § 11-2-104(1).

198.   Defendants and their agents impliedly warranted that the Class Vehicles were merchandise which was merchantable and fit for use for particular purposes at the time of the purchase and sale.

199.   The Class Vehicles were unfit for the particular purposes for which they were manufactured, marketed and/or sold at the time of the purchase and sale.

200.   As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiff and the Georgia Class have been damaged by the diminished value of their Vehicles.

201.  Plaintiff and the Georgia Class are entitled to damages, including the diminished value of their vehicles as a result of the defective airbags and safety recalls, in addition to any costs associated with renting, leasing, and/or purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## COUNT NINE

## ON BEHALF OF THE GEORGIA STATEWIDE CLASS

### Fraudulent Concealment

202.  Plaintiff hereby incorporates by reference the factual allegations contained in the preceding paragraphs of this Complaint.

203.  In the event that the Court declines to certify a nationwide class, Plaintiff brings this claim solely on behalf of Class Members who reside in Georgia.

204.  Defendants have known since at least April 2000 that the Class Vehicles contained dangerous and defective Takata airbags that placed occupants of those vehicles at great risk of injury and even death.  Defendants knew that the risk of a Takata airbag exploding and propelling metal shrapnel into the passenger compartment in the event of a foreseeable collision would be very frightening and

dangerous to consumers and would cause Defendants' sales to decline. Defendants intentionally concealed information relating to the Takata airbag defects, or acted with reckless disregard for the truth, and denied the consuming public information that is highly relevant to their purchasing/leasing decision.   Defendants fraudulently concealed the information for years, because it was more important to Defendants to increase sales, sacrificing innocent, trusting lives for profit.

205.   Plaintiff and the Georgia Class are entitled to damages, including the diminished value of their vehicles, as a result of the defective airbags and safety recalls, in addition to any costs associated with renting, leasing, and/or purchasing safer vehicles, incidental and consequential damages, and all other damages allowable under law, including such further relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment against the Defendants, as follows:

A.   an order certifying the proposed   Nationwide Class and/or Georgia Class designating Plaintiff as the named representative of the Class, and designating the undersigned as Class Counsel;

B.   a declaration that the airbags in Defective Vehicles are defective;

C.      a declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

D.      an order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

E.      an award to Plaintiff and Class Members of compensatory and exemplary damages, and statutory penalties, including interest, in an amount to be proven at trial;

F.      a declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiff and Class Members;

G.      an award of attorneys' fees and costs, as allowed by law;

H.      an award of pre-judgment and post-judgment interest, as provided by law;

I.    leave to amend this Complaint to conform to the evidence produced at

trial; and

J.    such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a jury trial as to all issues triable by a jury.

DATED:  November 4, 2014.

Respectfully submitted,

*/s/ R. Timothy Morrison*
**R. Timothy Morrison**
Georgia Bar No. 525130
**Jay F. Hirsch**
Georgia Bar No. 357185
**Kimberly J. Johnson**
Georgia Bar No. 687678
**Caroline G. McGlamry**
Georgia Bar No. 230832
**POPE, McGLAMRY, KILPATRICK,
MORRISON & NORWOOD, P.C.**
Lenox Overlook, Suite 300
3391 Peachtree Road, N.E.
P.O. Box 191625 (31119-1625)
Atlanta, GA  30326
(404) 523-7706
Fax (404) 524-1648
Email:  efile@pmkm.com

**Thomas P. Willingham, Esq.**
Georgia Bar No. 235049
Law Offices of Thomas P. Willingham, P.C.
3800 Colonnade Parkway, Suite 330
Birmingham, AL  35243
(205) 298-1011
Fax (205) 298-1012
Email:  tom@tpwpc.com

*Counsel for Plaintiff and the Proposed Classes*